FILED
2019 May-10 PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CECIL JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER: |
| | ) | CV-19- |
| | ) | JURY DEMAND |
| | ) | |
| DAL GLOBAL SERVICES, | ) | **5:19-cv-00714-HNJ** |
| a wholly owned subsidiary of | ) | |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

## I.   JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 §2000e *et seq.* and 42 U.S.C. §1981 providing for injunctive and other relief against race and sex discrimination in employment.

2.      The plaintiff filed his race and sex discrimination suit within 180 days of the discriminatory treatment and ninety (90) days from the receipt of his right-to-sue letter from the EEOC.

## II.   PARTIES

3.      Plaintiff, Cecil Jefferson (hereinafter "Jefferson" or "plaintiff"), is an African-American male citizen of the United States and a resident of Harvest, Madison County, Alabama.   The plaintiff was employed by the defendant at its Huntsville, Madison County, Alabama location.

4.      Defendant, DAL Global Services, a wholly owned subsidiary of Delta Air Lines, Inc. (hereinafter "DGS" or "defendant"), is a corporation doing business in Alabama, and is an entity subject to suit under 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.  The defendant employs at least fifteen (15) persons.

## III.  CAUSES OF ACTION

### RACE & SEX DISCRIMINATION IN SCHEDULING/JOB ASSIGNMENTS, SUSPENSION AND TERMINATION

5.      The plaintiff re-alleges and incorporates by reference paragraphs 1-4 with the same force and effect as if fully set out in specific detail hereinbelow.

6.      The plaintiff has been discriminated against because of his sex and race, African-American male, in suspension, scheduling, termination and other terms and

2

conditions of employment.

7.      The plaintiff was employed with defendant as Ready Reserve or part-time status and held a non-relating full-time employment position that required periodic TDY (temporary duty assignment). During the plaintiff's employment, there were approximately four (4) other employees who held non-relating full-time jobs similar to the plaintiff who worked for the United States Government.

8.      On or about December 7, 2017, the plaintiff informed John Couri, non-African-American Station Manager, that his full-time job required him to work a TDY out of state beginning January 7, 2018 until January 27, 2018. Therefore, he would not be available to work at DGS during that time.

9.      Around the same time, December 7, 2017, per Mr. Couri's instructions, the plaintiff also contacted Angie Odlaug (Caucasian female), supervisor, and advised her of his planned absence. The plaintiff provided his official government travel orders to Odlaug. The plaintiff received no response or direction from Ms. Odlaug at this time.

10.     On or about December 20, 2017, Ms. Odlaug informed ramp agents in a group text that an additional work day per week would be added to their schedules. The plaintiff again, at this time, reminded Ms. Odlaug about his original leave request for his full-time job. Again, no response from Ms. Odlaug was received.

11.    Plaintiff then had a conversation with Creston Jones about Ms. Odlaug's non-responsiveness to his requests for leave in January.  Mr. Jones suggested the plaintiff again provide his official government travel orders to support said request leave.  The plaintiff provided same to Mr. Jones and Mr. Couri on December 22, 2017.  The travel orders specifically stated that Plaintiff's TDY would occur during the time frame of January 7, 2018 until January 26, 2018.

12.    In the afternoon of December 29, 2017, Ms. Odlaug contacted the plaintiff via text message and told the plaintiff she could not accommodate his leave request.  The plaintiff immediately called her; however, his call was sent to voice mail.  The voice mail was full so the plaintiff could not leave a message.  However, Ms. Odlaug then sent the plaintiff at text stating that she was in a meeting and could not talk to him.  The plaintiff responded, via text, asking Ms. Odlaug to call him when her meeting was completed.  However, the plaintiff never received a call from Ms. Odlaug.

13.    On January 3, 2018, the plaintiff requested a meeting with Mr. Couri to discuss Ms. Odlaug's text regarding his request for leave was denied and to find a resolution regarding same. Mr. Couri confirmed that there was an issue with plaintiff request for leave; however, suggested the plaintiff find other employees to cover his shifts while he was gone.  Plaintiff advised Mr. Couri that he had given defendant a

4

month's notice of his leave and this was late notice for him to find coverage. Also, there had never been an issue with the plaintiff's past accommodations for his travels dealing with his full-time job. Plaintiff was also worried about not finding coverage at such late notice.

14.    However, on January 5, 2018, the plaintiff communicated to Mr. Couri that he was able to find coverage for all of his shifts except two (2). There were two (2) Wednesday shifts that were not covered - January 10th and 17th, 2018. Otherwise, the plaintiff had found coverage for seven of the nine shifts he would be missing.

15.    The requirement to find other employees to cover shifts had never been part of the plaintiff's past practice when having to travel for his full-time job. Often future shifts for the upcoming week are not posted until the end of the current work week. Therefore, shifts would change as would needed coverage.

16.    On January 12, 2018, the plaintiff returned home briefly due to a family emergency and returned back to TDY location on January 15, 2018. However, while at the terminal on January 12, 2018, Ms. Odlaug approached the plaintiff, yelling at him in front of customers and co-workers. Ms. Oldaug told the plaintiff that she had to work for him during his absence. Apparently, after the plaintiff found coverage for his shifts, some or all of the swap forms were denied and the schedules may have changed, which would have affected the coverage the plaintiff found before he left.

5

17.    Ms. Oldaug further threatened to take away the plaintiff's flight benefits. The plaintiff was very upset by Ms. Oldaug's behavior and he texted her directly regarding same. Ms. Oldaug called the plaintiff and apologized for her behavior.

18.    On January 26, 2018, the plaintiff returned to Huntsville, after completing his TDY, and decided to check his physical work mailbox before returning to work on January 27, 2018. He learned that his work badge was suspended. Shortly thereafter, it was confirmed that Mr. Couri had deactivated the plaintiff's badge on January 26, 2018.

19.    The plaintiff called Mr. Couri who told him that his badge was suspended because he had not been at work. When the plaintiff returned home, he had a certified letter dated January 19, 2018 from John Couri stating

> "Our records still indicate that you have not been to work for more than two weeks now and there hasn't been any medical paperwork showing a leave of absence. We had a previous discussion about you wanting time off to perform Temporary Duty at your full time job and in that discussion it was agreed that you need to find coverage for your shift as well as make up your hours missed while you were away.
>
> Mr. Jefferson, we are concerned that you have been absent without contacting us, nor have you provided any swaps that show your shift has been covered. Please contact me immediately at 256-270-3169. If you have not contacted me within a week from receiving this letter, it would be a sign that you are no longer interested in employment with

6

DGS and have voluntarily resigned and your employment with DGS with be terminated."

20.    The letter plaintiff received contains untrue statements as the plaintiff made a formal request for his leave to Mr. Couri, Ms. Odlaug and Mr. Jones (Supervisors); provided his official orders from his full-time job; and found coverage for seven of the nine shifts he would be missing. The defendant was fully aware of the plaintiff's leave of absence during the time he was out.

21.    The letter also stated the plaintiff had a week to contact Mr. Couri. The letter was dated January 19, 2018; however, UPS delivered the letter on January 23, 2018. The plaintiff attempted to use his badge on January 26, 2018 and had no access.

22.    Plaintiff called Mr. Couri on January 26, 2018 and was told he was on another call and would call the plaintiff back. However, Mr. Couri never called the plaintiff to follow up.

23.    On March 19, 2018, the plaintiff talked with Rico Jones, DGS Human Resources Manager regarding this matter and to obtain an update. The plaintiff was informed that a second letter had been sent on January 24, 2018 indicating the plaintiff's employment was terminated as of January 19, 2018. The plaintiff did not receive this letter.

7

24.    Similarly situated employees who were not African-American males were allowed special scheduling privileges to accommodate their full-time jobs but they were not suspended or terminated.  These employees are Destiny Walker, Lauren Owens, Nancy Pina, Sandra McElroy, Jenny Yu, Brooke Brumbly, Kevin Varcak, Elnar Patrick, Elvin Diaz Rivera, Josh Davis, Elbert Pugh, Tamas Lukacs and David Coone.

25.    The defendant's proffered reasons for plaintiff's suspension, termination, and denial of his requested schedule change were pretext for race and sex discrimination.

26.    The plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, recovery of benefits, including but not limited to, lost flight benefits, an injunctive and declaratory judgment is his only means of securing adequate relief.  The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## IV.    PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices,

8

procedures, conditions and customs of the defendant are violative of the rights of the plaintiff as secured by 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

2.    Grant plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

3.    Enter an order requiring the defendant to make the plaintiff whole by awarding him the position he would have had occupied in the absence of race and sex discrimination, back-pay (plus interest), front-pay, benefits, including but not limited to, flight benefits, punitive and compensatory damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4.    The plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Respectfully submitted,

Kevin W. Jent
Counsel for the Plaintiff

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
     FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

**DEFENDANT'S ADDRESS:**
Serve via certified mail:

DAL Global Services,
     a wholly owned subsidiary
     of Delta Air Lines, Inc.
980 Virginia Avenue, 4th Floor
Atlanta, Georgia 30354